UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTOINE GEX,

                       **Plaintiff,**

   -against-

**JEAN LIMONTAS and RONALD
DESROSIERS,**

                       **Defendants.**
------------------------------------------------------------------X

03 CV 1743 (NG) (CLP)

**OPINION AND ORDER**

**GERSHON, United States District Judge:**

Plaintiff commenced this action on April 10, 2003 to recover damages for personal injuries sustained in a car accident. Issue was joined on June 30, 2003 and, under the supervision of Magistrate Judge Cheryl L. Pollak, discovery has been completed. Defendants now move for summary judgment on the ground that plaintiff's injuries fail to meet the threshold for recovery under New York's No-Fault Law. For the reasons set forth below, defendants' motion for summary judgment is granted.

**FACTS**

Unless otherwise noted, the following facts are not in dispute:

On April 22, 2000, a car driven by plaintiff Antoine Gex, a 36 year old male, was involved in a collision (the "Accident") with a car driven by defendant Jean Limontas and owned by defendant Ronald Desrosiers. As a result of the Accident, plaintiff sustained injuries to his neck, back, left wrist, and left knee. Plaintiff did not receive medical attention at the scene of the Accident, but did

go to the emergency room at Calendonian Hospital the next day, where he was examined, treated, and released. Within one week after the Accident, plaintiff began a course of physical therapy at Big Apple Medical Care. He attended physical therapy sessions three times per week for approximately nine months. An x-ray of plaintiff's cervical spine was taken on May 9, 2000. MRIs of plaintiff's cervical spine and left knee were taken on May 11, 2000. A CAT scan of plaintiff's head was taken on May 9, 2000. An MRI of plaintiff's lumbosacral spine was taken on May 22, 2000. An x-ray of plaintiff's left wrist was taken on June 5, 2000. Besides the foregoing, plaintiff received no other medical treatment related to injuries sustained in the Accident prior to the commencement of this action on April 10, 2003.

At his deposition, plaintiff was asked to identify the activities that, as a result of the Accident, he could no longer perform or could perform only in a limited manner. Plaintiff testified that his injuries require him to use extra effort in getting out of bed in the morning. "[W]aking up in the morning is an exercise. Because when I wake up in the morning, it takes a while to– I guess my muscles have to warm up before I can start moving about." Pl.'s Dep. at 47. He also testified that his injuries have rendered him unable to play soccer and basketball and make it difficult for him to sit in a car for long periods of time. Further, plaintiff testified that he must be "careful" when dancing to avoid aggravating his injuries and that he has experienced a decreased sex drive since the Accident. Pl.'s Dep. at 48. At the time of the Accident, plaintiff was employed part-time as a substitute teacher; he is currently employed full-time as a French teacher. At no time following the Accident was plaintiff confined to his home or forced to miss work.

On June 21, 2004, plaintiff was examined by two doctors on behalf of defendants, Howard Baruch, M.D., an orthopedist, and Daniel J. Feuer, M.D., a neurologist. Their reports, made under

the penalties of perjury, were submitted by defendants in support of their motion for summary judgment. Dr. Baruch examined plaintiff's spine and knees, performed various range of motion tests, and reviewed plaintiff's medical records, including the MRI films taken of plaintiff's spine following the Accident. His report indicates that his physical examination of plaintiff demonstrated no objective findings and the plaintiff has no orthopedic disability. Dr. Feuer performed a neurological examination of plaintiff and reviewed plaintiff's medical records, including the CAT scan taken of plaintiff's head following the Accident. His report indicates that plaintiff did not demonstrate any objective neurological disability during his examination and that plaintiff is neurologically stable to engage in full active employment as well as full activities of daily living without restriction. On behalf of defendants, a third doctor, Sheldon P. Feit, M.D., a radiologist, reviewed the MRI films taken of plaintiff's spine following the Accident. Dr. Feit concluded that plaintiff had no abnormalities of either the cervical spine or the lumbosacral spine causally related to the Accident. A report made by Dr. Feit was also submitted by defendants in support of their motion for summary judgment.

On May 13, 2005, plaintiff was examined by Dr. Boris Tsatskis. At oral argument, plaintiff's counsel identified Dr. Tsatskis as an M.D. who specializes in physical rehabilitation. An affirmation by Dr. Tsatskis was submitted by plaintiff in opposition to defendants' motion for summary judgment. Dr. Tsatskis conducted a physical examination of plaintiff and reviewed plaintiff's medical records, including the MRI films taken of plaintiff's spine following the Accident. He concluded that plaintiff has bulging discs at C3-4 and L5-S1 and range of motion deficits that are causally related to the Accident. Although he describes the range of motion deficits quantitatively, he does not indicate what tests he performed nor what, if any, instruments he used to measure

3

plaintiff's range of motion. Dr. Tsatskis also concluded that plaintiff's range of motion deficits constitute a "permanent partial disability" and that "the prognosis for any type of full recovery" is "doubtful." Tsatskis Aff. ¶ 14.

During his deposition, plaintiff testified that he could not recall whether, prior to the Accident, he ever injured his neck, back, left wrist, or left knee, nor if he had ever received physical therapy. However, the report prepared by Dr. Feuer following his examination of plaintiff, which occurred subsequent to plaintiff's deposition, notes, under the heading "Past Medical History," that: "The claimant was involved in a motor vehicle accident in 1996 in which he sustained similar injuries and underwent therapy treatments." Feuer Rep. at 1.

## DISCUSSION

### I. General Principles of New York's No-Fault Law

In 1973, the New York State Legislature enacted the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law §§ 5101-5108 (McKinney 1973), commonly referred to as the "No-Fault Law," with the objective of promoting prompt resolution of injury claims, limiting cost to consumers, and alleviating unnecessary burdens on the courts. *Pommells v. Perez*, 4 N.Y.3d 566, 570-71 (2005). Pursuant to the No-Fault Law, every car owner must carry automobile insurance that will compensate injured parties for "basic economic loss," up to $50,000, occasioned by the use or operation of that vehicle in New York State, irrespective of fault. N.Y. Ins. Law §§ 5102(a), 5103; *Pommells*, 4 N.Y.3d at 571. Non-economic loss is not compensable, and no law suit to recover damages for such loss may be filed, unless the claimant has suffered a "serious injury." N.Y. Ins. Law § 5104(a). The No-Fault Law thus provides a compromise: prompt payment for basic

4

economic loss to injured persons regardless of fault in exchange for a limitation on litigation to cases involving serious injury. *Pommells*, 4 N.Y.3d at 571. The statute defines "serious injury" as follows:

> "Serious injury" means a personal injury which results in death; dismemberment; significant disfigurement; a fracture; loss of a fetus; permanent loss of use of a body organ, member, function or system; permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

N.Y. Ins. Law § 5102(d).

The New York Court of Appeals has rejected the contention that "the question of whether [a plaintiff] has suffered a serious injury is always a fact question for the jury." *Licari v. Elliott*. 57 N.Y.2d 230, 237 (1982). Instead, the Court of Appeals has held that it is appropriate for the court to determine, in the first instance, whether a plaintiff's injuries meet the threshold requirement of the statute. *Id*. ("Since the purpose of the No-Fault Law is to assure prompt and full compensation for economic loss by curtailing costly and time-consuming court trials, requiring that every case, regardless of the extent of the injuries, be decided by a jury would subvert the intent of the Legislature and destroy the effectiveness of the statute.") (internal citations omitted).

## II. Summary Judgment Standard

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the standard for a directed verdict under Rule 50(a), which permits the court to grant a motion for judgment as a matter of law when "there is no legally sufficient evidentiary basis for a reasonable jury" to decide an essential issue in favor of the non-moving party. Fed. R. Civ. P. 50(a)(1); *see id*. at 323.

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To prevail, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *id*. at 587. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial, and entitles the moving party to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

In cases that are governed by the No-Fault Law, a defendant moving for summary judgment can establish a *prima facie* case that the plaintiff's injuries are not "serious" within the meaning of the statute by submitting the affidavits or affirmations of medical experts who have examined the plaintiff and have concluded that no objective medical findings support the plaintiff's claim. *Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992); *Grossman v. Wright*, 268 A.D.2d 79, 83-84 (2d Dep't 2000); *see Decaze v. D & D Transp.*, 2005 WL 2436222, *2 (E.D.N.Y. Sept. 30, 2005). Once the defendant does so, the burden shifts to the plaintiff to come forward with competent evidence

sufficient to overcome the defendant's submissions by demonstrating that a triable issue of fact exists concerning whether the plaintiff sustained a serious injury. *Gaddy*, 79 N.Y.2d at 957; *Grossman*, 268 A.D.2d at 84; *see Decaze*, 2005 WL 2436222 at *2 . If the plaintiff fails to meet that burden, summary judgment must be granted to the defendant.

### III. Defendants' Initial Showing

Here, the reports of Dr. Baruch, Dr. Feuer, and Dr. Feit, each of which concludes that plaintiff did not sustain any disability as a result of the Accident, are sufficient to establish a *prima facie* case that plaintiff's injuries are not serious within the meaning of the No-Fault Law.[1]

### IV. Plaintiff's Evidence in Response to Defendants' Initial Showing

A plaintiff cannot meet the No-Fault Law's serious injury threshold unless the degree of the plaintiff's injuries is truly serious. *See Licari*, 57 N.Y.2d at 236 ("[O]ne of the obvious goals of the legislature's scheme of no-fault automobile reparations is to keep minor personal injury cases out of court."). The statute sets forth nine specific categories of personal injuries that constitute "serious injury." *See* N.Y. Ins. Law § 5102(d). In response to interrogatories served by defendants, plaintiff

---

[1]Plaintiff contends that the reports of Dr. Baruch and Dr. Feit are inadmissible because they are not properly affirmed. Under New York law, when reports prepared by a medical expert are neither sworn to nor affirmed to be true under penalties of perjury, they do not constitute competent evidence. *See, e.g., Baron v. Murray*, 268 A.D.2d 495, 495 (2d Dep't 2000). But the reports submitted by Dr. Baruch and Dr. Feit both include the following statement: "I declare, under the penalties of perjury, that the information contained within this document was prepared and is the work product of the undersigned, and is true to the best of my knowledge and information." Plaintiff argues that use of the words "I declare," rather than "I affirm" renders the reports inadmissible. This argument is without merit. The operative words in any unsworn statement made in lieu of a statement under oath, whether pursuant to N.Y. C.P.L.R. 2106 or 28 U.S.C. § 1746, are "under penalties of perjury." Whether the verb employed by the subscriber is "affirm," "declare," "state," "certify," "verify,"or something comparable is of no legal consequence in this context.

7

identified only one of these categories as applicable to the injuries that he sustained in the Accident: a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment. At oral argument, plaintiff's counsel argued that the evidence supports a finding that two other categories are also applicable: permanent consequential limitation of use of a body organ or member and significant limitation of use of a body function or system.

The New York Court of Appeals has repeatedly instructed trial courts to construe the three categories at issue here narrowly and in accordance with the statute's aim to limit personal injury litigation arising from automobile accidents. *See, e.g.*, *Licari*, 57 N.Y.2d at 236; *Gaddy*, 79 N.Y.2d at 957. With respect to the ninety-out-of-one-hundred-eighty-days category, the words "substantially all" must be construed to mean that the plaintiff has been curtailed from performing his or her usual activities to a great extent rather than some slight curtailment, and the ninety days requirement must be taken literally. *Licari*, 57 N.Y.2d at 236. With respect to the permanent-consequential-limitation and significant-limitation categories, whether a limitation of use or function is "significant" or "consequential" involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose, and use of the body part. *Toure v. Avis Rent A Car Systems, Inc.*, 98 N.Y.2d 345, 353 (2002). The adjectives "significant" and "consequential" must be construed to describe something more than a minor limitation; thus, a minor, mild, or slight limitation of use or function does not rise to the level of a serious injury. *See Licari*, 57 N.Y.2d at 236.

In a recent decision, the Court of Appeals noted that "[i]n the context of soft-tissue injuries involving complaints of pain that may be difficult to observe or quantify, deciding what is a 'serious injury' can be particularly vexing." *Pommells*, 4 N.Y.3d at 571. "Many courts have approached injuries of this sort with a well-deserved skepticism." *Id*. For this reason, objective proof of a plaintiff's injury is required to satisfy the statutory "serious injury" threshold; subjective complaints alone are not sufficient. *Toure*, 98 N.Y.2d at 350. Proof of a herniated disc, without additional objective medical evidence establishing that the accident resulted in significant physical limitations, is not alone sufficient to establish a serious injury. *Pommells*, 4 N.Y.3d at 574. To prove the extent or degree of physical limitation, an expert's designation of a numeric percentage of a plaintiff's loss of range of motion can be used to substantiate a claim of serious injury. *Toure*, 98 N.Y.2d at 350. An expert's qualitative assessment of a plaintiff's condition also may suffice, provided that the evaluation has an objective basis and compares the plaintiff's limitations to the normal function, purpose, and use of the affected body organ, member, function, or system. *Id*. Where, however, the plaintiff's evidence is limited to conclusory assertions by a treating physician that are tailored to meet statutory requirements, summary judgment should be granted for the defendant. *Lopez v. Senatore*, 65 N.Y.2d 1017, 1019 (1985).

Here, as an initial matter, plaintiff was never confined to his house nor forced to miss work as a result of his injuries. According to plaintiff's deposition testimony, plaintiff's limitations consist of an inability to play soccer and basketball, a difficulty getting out of bed, riding in cars for long periods, and dancing, and a decreased sex drive. There is no evidence in the record, however, that the activities in which plaintiff is now limited constituted substantially all of his customary daily activities prior to the Accident. As a result, he has not satisfied his burden with respect to the ninety-

out-of-one-hundred-eighty-days category.

Overall, the only evidence submitted by plaintiff in opposition to defendants' summary judgment motion is the affirmation of Dr. Tsatskis. Although Dr. Tsatskis provides a schedule that sets forth his assessment, in quantitative terms, of the limitations on plaintiff's range of motion caused by two bulging discs that he observed in plaintiff's MRI films, he does not describe the tests that he performed to arrive at the numbers in the schedule, nor explain how the range of motion deficits he finds correspond to any limitations of use or function of plaintiff's body. Furthermore, while Dr. Tsatskis concludes that plaintiff's injuries are permanent, his affirmation provides no basis for this prognosis. Mere repetition of the word "permanent" in the affidavit of a treating physician is insufficient to establish "serious injury." *Gaddy*, 79 N.Y.2d at 958; *Lopez*, 65 N.Y.2d at 1019. Dr. Tsatskis's affirmation consists almost entirely of "conclusory assertions tailored to meet statutory requirements" and is, therefore, insufficient to satisfy plaintiff's burden of proof with respect to any of the statutory categories. *Id*.

## V.     Contributory Factors

In any event, defendants are entitled to summary judgment because the evidence demonstrates that contributory factors interrupted the chain of causation between the Accident and plaintiff's injuries. The New York Court of Appeals recently held that, even when there is objective medical proof that a plaintiff sustained a serious injury, when additional contributory factors interrupt the chain of causation between the accident and claimed injury– such as a gap in treatment, an intervening medical problem or a pre-existing condition– summary dismissal of the complaint may be appropriate. *Pommells*, 4 N.Y.3d at 572.

Here, plaintiff ended his physical therapy nine months after the Accident and sought no other treatment until four years later, when he visited Dr. Tsatskis in connection with this case. As in the first of the three cases decided in *Pommells*, the gap in plaintiff's treatment "was, in reality, a cessation of all treatment." *Id.* at 574. "While a cessation of treatment is not dispositive– the law surely does not require a record of needless treatment in order to survive summary judgment– a plaintiff who terminates therapeutic measures following the accident, while claiming 'serious injury,' must offer some reasonable explanation for having done so." *Id*. The only proffered explanations concerning the gap in plaintiff's treatment come from Dr. Tsatskis, who states that:

> [Y]our Affirmant is mindful that there exist a "gap" between this patient's last therapy visit and my own recent examination. I would say that it would have not been realistic for the therapy to have continued unabated continuously from the date of accident in 2000 I've never seen such a case.
>
> The two reasons being the termination of no-fault benefits generally occurs within the months following the occurrence rendering the patient unable to pay for further treatment once the insurance company stops paying for the visits and therefore he must stop going.
>
> In addition, the modalities of conservative therapy administered to the patient somewhat ameliorated symptoms in numerous months of therapy following the accident, however, they did not cure him or result in pre-accident functioning.
>
> Based upon my review of records he had achieved maximum benefits from his therapy and hence it would not have served to totally eliminate his symptoms which left him with a guarded prognosis due to the longevity of the symptomology.

Tsatskis Aff. ¶¶ 6-9. Both of the proffered explanations are speculative and general; neither is based on Dr. Tsatskis's first-hand knowledge as to why treatment in fact stopped. There is no evidence in the record concerning when plaintiff's no-fault benefits ended nor whether he could afford to pay for physical therapy treatments in the absence of no-fault benefits. Likewise, there is no evidence that, at the time that plaintiff ceased receiving treatment, he was either advised by his treating

physician or concluded on his own that further treatment would not yield additional benefit.

Since plaintiff offers no explanation supported by competent evidence for having terminated his treatment more than two years prior to the commencement of this lawsuit and more than four years prior to his examination by Dr. Tsatskis, defendants are entitled to summary judgment.

The court's decision should not be construed as concluding that plaintiff's personal injuries are not *bona fide*, nor that they are not an actual source of discomfort for plaintiff. Rather, plaintiff simply has not established that they are the kind of injuries that the New York Legislature deemed compensable under the No-Fault Law.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted. The Clerk of Court is directed to enter judgment for defendants.

**SO ORDERED.**

/S/
**NINA GERSHON**
**United States District Judge**

Dated: Brooklyn, New York
March 29, 2006